HENRY C. BERGER v. S. M. STEVENS, ABNER R. ARNOLD, THE FINANCE COMPANY, FRANK A. BARBER, L. B. JACKSON, R. G. SCRUGGS AND HAYDEN GRINDSTAFF.

(Filed 22 May, 1929.)

**1. Aliens A a—Alien of friendly nation may sue in courts of this State.**

A nonresident alien of a friendly nation may invoke the jurisdiction of the courts of this State to maintain his rights of property in the absence of statutory restrictions.

**2. Usury C a—Usury must be pleaded.**

Usury must be pleaded and the question may not be raised by demurrer.

APPEAL by defendants from *Schenck, J.,* at April Term, 1929, of BUNCOMBE. Affirmed.

The plaintiff in his complaint alleges that he is a citizen and resident of Nice, in the Republic of France. The defendant The Finance Company is a corporation created and doing business under the laws of North Carolina, principal office in Asheville, N. C. The other defendants are citizens and residents of Asheville, N. C.

That on or about 12 October, 1926, at Asheville, the defendants, S. M. Stevens and Abner R. Arnold, made and delivered to the defendant, The Finance Company, their three promissory notes in writing, dated on that day, each for the sum of six thousand and forty-two and 50/100 dollars ($6,042.50), wherein and whereby they promised to pay said amounts to said The Finance Company or its order, at Asheville, on or before one, two and three years, after date, respectively, with interest from date at the rate of six per cent per annum until paid, interest payable semiannually. Balance purchase money on land.

That The Finance Company, before the maturity of said notes, endorsed and delivered said notes to the defendants Frank A. Barber, L. B. Jackson, R. G. Scruggs and Hayden Grindstaff, for value, and thereafter, and prior to the maturity of said notes, said Frank A. Barber, L. B. Jackson, R. G. Scruggs and Hayden Grindstaff endorsed said notes for a valuable consideration and transferred said notes to the plaintiff Henry C. Berger.

That plaintiff is now the owner and holder of said notes, and no part thereof has been paid, except half of the interest that had accrued thereon to 12 April, 1927. The two notes payable 12 October, 1928, 1929, were protested for nonpayment.

Plaintiff prays judgment: "(1) That he have and recover of the defendants the sum of $18,127.50, with interest on said notes at the rate of six per cent compound semiannually from the date of said notes, subject only to a credit of one-half of the interest on said notes that had accumulated prior to 12 April, 1927; (2) that he recover the sum of $6.40 as protest fees; (3) that he recover his costs herein incurred; (4) that he have such other and further relief as to the court shall seem proper and just."

The defendants demur: (1) For that it appears upon the face of the complaint that the plaintiff has no legal capacity to sue in the courts of this State. (2) For that it appears upon the face of the said complaint that there is a defect of parties defendant to this action. (3) For that it appears upon the face of said complaint that several causes of action have been improperly united or joined herein. (4) For that it appears upon the face of said complaint that the plaintiff seeks to collect compound interest upon an unlawful contract which is void in law. (5) For that it appears upon the face of said complaint that the complaint does not state facts sufficient to constitute a cause of action."

The court below rendered the following judgment: "This matter coming on to be heard before Schenck, Judge, upon the demurrer filed by the defendants, and being heard, the demurrer is overruled."

The defendants excepted, assigned error and appealed to the Supreme Court.

*Mark W. Brown for plaintiff.*
*Joseph W. Little and George W. Craig for defendants.*

CLARKSON, J. The major contest of defendants is founded on the allegation in the complaint that the plaintiff is a nonresident alien and is living in Nice, in the Republic of France. The question arises: Can a nonresident alien sue in the courts of this State? We think a resident of any friendly nation can sue.

In 1796 the question arose in this jurisdiction and an English subject was allowed to sue. In a *per curiam* opinion, in *Executors of Cruden v. Neale,* 2 N. C., at p. 344, the following observations are made: "All persons in general, as well foreigners as citizens, may come into this court to recover rights withheld, and to obtain satisfaction for injuries done, unless where they are subject to some disability the law imposes. Foreigners are in general entitled to sue, unless a war exists between

our country and theirs. . . . It is incompatible with a state of national friendship, and is a cause of war, if the citizens of another country are not allowed to sue for and obtain redress of wrongs in our courts."

The law is stated in 2 C. J. (Aliens), p. 1070, part sec. 37, as follows: "It may be laid down, as a general rule, that aliens, except alien enemies, who are *sui juris,* and not otherwise specially disabled by the law of the place where the suit is brought, may there maintain suits in the proper courts to vindicate their rights and redress their wrongs. This right is not affected by the fact that a similar remedy is not afforded to aliens in the country to which plaintiff belongs. The right of an alien to sue is a matter of comity as distinguished from a matter of right, and, while the courts will not ordinarily deny the right in the absence of positive legislation taking it away, they should not permit the privilege to be exercised so as to work injury to the interests of citizens of the state."

1 R. C. L. (Aliens), p. 824, sec. 35, and part 36: "It seems to have been the rule of the early common law that an alien could not maintain real or mixed actions. The reason given was that the maintenance of real actions was not necessary for the encouragement of commerce as in case of personal actions, and that an alien should not be allowed to bring an action to recover property that he could not hold against the state. But the old common-law rule has long since been changed. If an alien may take and hold real estate against every person, he surely may maintain an action to recover its possession from those who wrongfully withhold it from him. If it is the property of the alien as against everybody but the government, he has the right to the use of it; and if necessary to prosecute for it, surely the right to prosecute is necessarily consequent upon the right to its enjoyment. And such is the law at the present time, unless changed by statute. (Sec. 36) As to personal actions, arising or recognized within the jurisdiction, an alien friend, either resident or nonresident, may maintain suit in the courts without any special statutory authority; such was the rule of the early common law, and such is the rule today." See *Krachanake v. Manufacturing Co.,* 175 N. C., 435.

We have no statute in this State prohibiting aliens from instituting an action in the courts of this State.

"The policy of the United States in all cases of complaint made by foreigners is to extend to them the same means of redress as is enjoyed by our own citizens. . . . In the courts of the United States alien friends are entitled to claim the same protection of their rights as citizens." Moore's International Law Digest, Vol. 4, sec. 536, p. 7. *Van Kempen v. Latham,* 195 N. C., at p. 394.

In *Hinton v. Hinton,* 196 N. C., p. 341, it was held in this jurisdiction that an alien was not qualified to act as a juror for as such he was an integral part of the due administration of the law.

It is a matter of common knowledge that the French, and especially the French Huguenots in America, at the breaking out of the Revolutionary War, to a man, joined the American cause. There were no Tories among them. Some of the best fighters, generals and others, were French or of French descent. France came to our rescue during the Revolution and helped us win our independence. It is a disputed fact, but worth preserving, that Gen. John J. Pershing, head of the American Expeditionary Forces during the World War, stood at LaFayette's tomb and said "LaFayette, we are here." The debt we owed to France was not and should never be forgotten. France has always been and is now a friendly nation. We can see no reason why one of her citizens cannot sue in the courts of this State, although a nonresident.

As to the interest proposition, if usury, it must be pleaded. 27 R. C. L. (Usury), sec. 70. The demurrer cannot be sustained.

The other causes of demurrer cannot be sustained. C. S., 507. *Taylor v. Ins. Co.,* 182 N. C., at p. 122. The judgment below is

Affirmed.